IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADEBISI BELLO, individually, | ) | |
| and on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 18-cv-8196 |
| v. | ) | |
| | ) | |
| THE PARC AT JOLIET, LLC, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

**COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiff Adebisi Bello ("Bello" or "Plaintiff"), by and through her attorneys, individually and on behalf of all others similarly situated (the "Class"), brings claims as a Collective Action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure and in accordance with Illinois state wage and hour laws against The Parc at Joliet, LLC ("Parc"), its subsidiaries and affiliates, concerning their acts and states upon personal belief as to herself and her own acts and, concerning all other matters, upon information, belief, and the investigation of her attorneys:

**NATURE OF THE ACTION**

1. Plaintiff brings this action to redress Defendant's violations of the FLSA and the Illinois Minimum Wage Law, 820 ILCS §§ 105, *et seq.* ("IMWL"), by knowingly suffering or permitting employees at Parc to experience interrupted meal breaks without properly tracking these interruptions or paying overtime wages due for these breaks.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction." This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under the FLSA.

3. This Court has supplemental jurisdiction over Plaintiff's IMWL claims pursuant to 28 U.S.C. § 1367, because these claims arise from the same occurrences and transactions as Plaintiff's FLSA claim (*i.e.*, Defendant's failure to pay overtime wages for meal break work) and are so related to this claim as to form part of the same case or controversy.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District: Plaintiff resides in this District, Plaintiff worked for Defendant in this District, Plaintiff suffered the losses at issue in this District, Defendant has significant business contacts in this District, Defendant is alleged to have engaged in the wrongful conduct at issue in this District, and actions and omissions giving rise to Plaintiff's claims occurred in this District.

## THE PARTIES

5. Plaintiff Adebisi Bello is an adult citizen of the state of Illinois who resides in Will County. Ms. Bello worked as a full-time Licensed Practical Nurse at the Parc at Joliet facility from May 2018 to October 30, 2018, logging 40 or more hours (not including the unpaid time claimed in this action) in certain workweeks. Ms. Bello has submitted an opt-in consent form to join this lawsuit. *See* Exhibit A.

2

6. Defendant Parc is a limited liability company existing under the laws of the State of Illinois, with its principal place of business in Joliet, Illinois. Parc is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

## BACKGROUND FACTS

7. Defendant maintains written timekeeping and compensation policies for employees at Parc. Under these policies, Defendant promises, among other things, one unpaid, 30-minute meal break per shift and to pay overtime premium wages for all overtime hours worked (defined as time worked over 40 hours in any given workweek). Plaintiff is familiar with these policies because she worked at Parc and has discussed timekeeping, compensation, meal break, and overtime issues with her co-workers and managers as part of Defendant's day-to-day operations.

8. In keeping with their common policies and practices, Defendant automatically deducts 30 minutes from each shift for hourly employees with hands-on patient care responsibilities, representing their unpaid meal break. Plaintiff is familiar with this automatic deduction because she has to work 8½ hour shifts to earn her full wages for an 8-hour shift, and has discussed the automatic meal break deduction with her co-workers and managers as part of Defendant's day-to-day operations.

9. Defendant maintains common policies at Parc that require employees to provide excellent patient care at all times. Among other things, these policies require hourly employees with hands-on patient care responsibilities to prioritize their patient care duties over their ability to take an uninterrupted meal break. Plaintiff is familiar with these policies because she received training about the need to place the highest importance on her patient care responsibilities and because, as part of Defendant's day-to-day operations, she discussed the routine interruption of

3

her meal breaks as a consequence of her efforts to provide excellent patient care with her co-workers and managers.

10. Defendant regularly maintains staffing levels too low for hourly employees with hands-on patient care responsibilities to take a full, uninterrupted meal break off their unit. Further, Defendant does not maintain a dedicated staff of rotating relief workers to free hourly employees from their patient care duties for the duration of their meal break.

11. Defendant does not maintain any policy or procedure that allows or requires hourly employees to contemporaneously track, record, or report when they experience a meal break that is interrupted by more than *de minimis* work (an "interrupted meal break").

12. Defendant does not maintain any policy or procedure that allows or requires hourly employees to request wages for an interrupted meal break.

13. As a result, although interrupted meal breaks are a regular occurrence for hourly employees with hands-on patient care responsibilities at Parc, these employees do not know they have any right to claim pay for an interrupted meal break, do not maintain any contemporaneous records of their interrupted meal breaks, do not claim wages for their interrupted meal breaks and do not receive any wages for their interrupted meal breaks.

14. This situation is exacerbated due to under-staffing, which causes a backlog of patient visits for each employee. The constant need to visit each patient makes it extremely difficult for employees to take a full lunch break (if any) each day they are working.

15. Defendant also fails to pay employees for their 90-day sign-on bonus, despite promising to do so.

16. When an employee is hired at Parc, Defendant promises to pay him or her a $1,500 bonus after 90 days of employment. When Plaintiff began working at Parc, Defendant likewise promised her a $1,500 bonus after 90 days.

17. Despite this promise to pay, Parc did not and does not pay Plaintiff and putative class members the promised bonus.

## FACTS RELATING TO THE NAMED PLAINTIFF

18. Because of Defendant's short-staffing practices, the lack of dedicated relief workers and the constant, unpredictable demands of patient-care, hourly employees with hands-on patient care responsibilities at Parc rarely receive a full, 30-minute meal break.

19. From May 22, 2018 to October 30, 2018, Ms. Bello worked as Licensed Practical Nurse at Parc Joliet and was typically scheduled to work five days a week from around 10:30pm until 7am (40 hours plus five 30-minute unpaid meal breaks). Her primary work responsibilities included: admitting patients, providing patient care, monitoring vital signs, administering medicine, monitoring blood-work and test results, responding to emergency calls and security alarms, communicating with doctors and other hospital employees, providing information and guidance to patients' families, and completing paperwork relating to her patients' condition and treatment, among other things.

20. At Parc, the combination of patient census, patient acuity, staffing levels (including the lack of dedicated relief workers) and the urgent and unpredictable nature of hands-on patient care work did not typically permit Plaintiff to leave her unit for a meal break, much less take a full, 30-minute meal break free from work.

21. From May 22, 2018 to October 30, 2018, Ms. Bello missed her meal break virtually every work day. On these days, she ate on the run, either between work-related tasks, or while

5

charting and manning the phones. Defendant never told Ms. Bello she could record an interrupted meal break as work time or claim pay for an interrupted meal break. Nor did Defendant ever provide Ms. Bello with any procedure to record or claim pay for her interrupted meal breaks. As a result, Ms. Bello did not claim wages for any of her interrupted meal breaks and did not receive any wages for her interrupted meal breaks.

22. Despite their extensive, regular knowledge of patient census, patient acuity and staffing levels, Defendant never freed Plaintiff from the need to perform meal break work, gave Plaintiff adequate coverage or relief so she could take full meal breaks, trained Plaintiff about her entitlement to claim wages for interrupted meal breaks, implemented any procedure to reliably track Plaintiff's interrupted meal breaks, or implemented any procedure to ensure Plaintiff was paid all wages owed for her interrupted meal breaks. As a result, Defendant has not paid Plaintiff for any of her interrupted meal breaks.

23. Plaintiff and Defendant entered into an agreement when Plaintiff was hired, whereby Defendant was to provide Plaintiff with a $1,500 bonus after 90 days of employment.

24. However, as of this Complaint's filing date, Defendant has only paid Plaintiff $500 of the $1,500 bonus it promised to Plaintiff; Defendant failed to pay the remaining $1,000 to Plaintiff.

## FLSA COLLECTIVE ACTION ALLEGATIONS

25. Plaintiff brings her FLSA claim on an opt-in, collective basis pursuant to 29 U.S.C. § 216(b) for herself and all Parc employees with hands-on patient care responsibilities who have worked on a full-time hourly basis in any workweek during the maximum limitations period (the "FLSA Collective"). Plaintiffs reserve the right to amend this definition as necessary.

26. Plaintiff is a member of the FLSA Collective because she has worked as a full-time hourly employee with hands-on patient care responsibilities at Parc throughout the maximum limitations period.

27. Although Plaintiff and the FLSA Collective may have worked in different units and had different job titles or managers, this action may be properly maintained on a collective basis because, among other things:

    a. Plaintiff and the FLSA Collective all worked in the same facility;

    b. Plaintiff and the FLSA Collective were subject to and required to comply with the common policies and practices at issue in this case;

    c. Plaintiff and the FLSA Collective received common training relating to the matters at issue in this case, including a common lack of training about recording or requesting pay for interrupted meal breaks;

    d. Defendant maintained common timekeeping systems and policies with respect to Plaintiff and the FLSA Collective;

    e. Defendant had exclusive responsibility for maintaining accurate records tracking the hours Plaintiff and the FLSA Collective worked and the wages they received, *see* 29 C.F.R. §516.2(a)(7); and

    f. Defendant maintained common payroll systems and policies with respect to Plaintiff and the FLSA Collective that did not cause or require wages to be properly paid for all interrupted meal breaks.

28. Plaintiff and the FLSA Collective do not meet any test for exemption under the FLSA.

29. Plaintiff estimates that the FLSA Collective, including both current and former employees over the relevant period, may include several hundred people. The precise number of FLSA Collective members is available from Defendant's personnel, scheduling, time and payroll

7

records, and from input received from the collective group members as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b).

## ILLINOIS CLASS ACTION ALLEGATIONS

30. Plaintiff brings her IMWL claim on an opt-out, class action basis pursuant to Fed. R. Civ. P. 23 for herself and all Illinois residents who have worked in a position with hands-on patient care responsibilities at Parc on a full-time (FTE 0.8 or over) hourly basis in any workweek during the maximum limitations period without receiving overtime wages due for all overtime hours they worked (the "Illinois Class"). Plaintiff reserves the right to amend this definition as necessary.

31. Plaintiff is a member of the Illinois Class because she is an Illinois resident who has worked as a full-time hourly employee with hands-on patient care responsibilities at Parc throughout the maximum limitations period.

32. Class treatment of Plaintiff's IMWL claim is appropriate because the Illinois Class satisfies the requirements of Fed. R. Civ. P. 23.

33. The Illinois Class is so numerous that joinder of all its members would be impracticable. Parc has at least several hundred employees who fit the Illinois Class definition, meaning that joining all of their claims would be impracticable.

34. Plaintiff's claims are typical of the claims belonging to the Illinois Class. Plaintiff is similarly-situated to the Illinois Class because they worked at Parc under the common policies and procedures identified above, and were denied legally-required wages for interrupted meal breaks as a result of Defendant's common course of wrongful conduct.

35. There are material questions of law or fact common to the members of the Illinois Class because, as discussed throughout this filing, Defendant engaged in a common course of

conduct that violated their legal rights. Any individual questions Plaintiff's claims present will be far less central to this litigation than the numerous common questions of law and fact, including:

    a.    whether Plaintiff and the Illinois Class were subject to materially-identical timekeeping and compensation policies that promise hourly employees one unpaid, 30-minute meal break per shift;

    b.    whether Plaintiff and the Illinois Class were subject to materially-identical timekeeping and compensation policies that promise hourly employees overtime premium wages will be paid for all overtime hours worked;

    c.    whether Plaintiff and the Illinois Class were subject to materially-identical policies requiring employees to provide excellent patient care at all times and/or prioritize their patient care duties over their ability to take an uninterrupted meal break;

    d.    whether Defendant provided the Illinois Class with any training about requesting wages for an interrupted meal break;

    e.    whether Defendant maintains any policies allowing the Illinois Class to request wages for an interrupted meal break;

    f.    whether Defendant required or permitted the Illinois Class to track their interrupted meal breaks or claim wages for interrupted meal breaks;

    g.    whether Defendant denied Plaintiff and the Illinois Class overtime premium wages owed under the IMWL; and

    h.    whether Defendant should be required to pay compensatory damages, liquidated damages and/or attorneys' fees and costs, or enjoined from continuing the wage and hour violations alleged in this Complaint.

36. Plaintiff will fairly and adequately assert and protect the interests of the Illinois Class because there is no apparent conflict of interest between Plaintiff and the Illinois Class; Plaintiff's counsel has successfully prosecuted many complex class actions, including state-law wage and hour class actions, and will adequately prosecute these claims; and Plaintiff has adequate

9

financial resources to assure that the interests of the Illinois Class will not be harmed because their counsel has agreed to advance the costs and expenses of litigation on the Class' behalf contingent upon the outcome of this litigation consistent with Ill. R. Prof. Conduct 1.8(e)(1).

37. Allowing this action to proceed as a class action will provide a fair and efficient method for adjudication of the issues presented by this controversy because issues common to the Illinois Class predominate over any questions affecting only individual members; no difficulties are likely to be encountered in the management of this litigation as a class action; and the claims addressed in this Complaint are not too small to justify the expenses of class-wide litigation, nor are they likely to be so substantial as to require the litigation of individual claims.

38. Allowing Plaintiff's IMWL claim to proceed as a class action will be superior to requiring the individual adjudication of each Illinois Class member's claim, since requiring several hundred hourly-paid employees to file and litigate individual wage claims will place an undue burden on the Illinois Class members, Defendant, and the Courts. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expenses if these claims were brought individually. Moreover, as the damages suffered by each Illinois Class member are relatively small, the expenses and burdens associated with individual litigation would make it prohibitively impractical for them to bring individual claims. Further, the presentation of separate actions by individual Illinois Class members could create a risk for inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of the Illinois Class members to protect their interests.

39. Allowing Plaintiff's claims to proceed in a class action setting is also appropriate because Illinois's wage laws expressly permit private class action lawsuits to recover unpaid regular and overtime wages.

## COUNT I
## VIOLATION OF THE FLSA
## Unpaid Overtime Wages

40. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

41. Defendant is an "employer" as defined by 29 U.S.C. § 203(d).

42. Plaintiff and the FLSA Collective are "employees" as defined by 29 U.S.C. § 203(e)(1) and are not exempt from the FLSA's protections for any reason.

43. The wages Defendant pays to Plaintiff and the FLSA Collective are "wages" as defined by 29 U.S.C. § 203(m).

44. Defendant is an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

45. 29 U.S.C. § 216(b) expressly allows private Plaintiff to bring collective actions to enforce employers' failure to comply with the FLSA's requirements.

46. Throughout the relevant period, Defendant has been obligated to comply with the FLSA's requirements, Plaintiff and the FLSA Collective members have been covered employees entitled to the FLSA's protections, and Plaintiff and the FLSA Collective members have not been exempt from receiving wages required by the FLSA for any reason.

47. 29 U.S.C. § 207(a)(1) requires employers to pay their employees an overtime rate, equal to at least one and one-half times their regular rate of pay, for all hours worked in excess of 40 hours per week.

11

48. The FLSA does not specifically define the term "work", but the Department of Labor has promulgated regulations containing "Principles for Determination of Hours Worked" to inform this issue. *See* 29 C.F.R. §§ 785.11-785.13. These Principles plainly state that any work an employer "suffers or permits" to be performed at the job site (like Plaintiff's meal break work) must be counted as hours worked when the employer "knows or has reason to believe" the work is being performed. *Id.*

49. Defendant maintains a written policy promising Plaintiff and the FLSA Collective one 30-minute unpaid meal break per shift. Having made this promise, Defendant was obligated to ensure either that Plaintiff and the FLSA Collective were completely relieved from all work-related duties during their unpaid meal break, or that they accurately tracked and recorded both their missed and interrupted meal breaks and received all overtime wages due for all missed and interrupted meal breaks.

50. Defendant requires Plaintiff and the FLSA Collective to prioritize their work-related responsibilities over their entitlement to an uninterrupted meal break.

51. Defendant does not require Plaintiff and the FLSA Collective to "clock-out" before starting their meal break, "clock-in" after their meal break, or create any contemporaneous record of the amount of uninterrupted, work-free time they have during any given meal break.

52. Defendant does not maintain adequate staffing levels or provide dedicated relief workers to ensure Plaintiff and the FLSA Collective are completely relieved from work-related duties during their entire unpaid meal break.

53. Defendant does not maintain any policy or procedure requiring Plaintiff and the FLSA Collective to track or report their interrupted meal breaks or any policy or procedure allowing Plaintiff and the FLSA Collective to request wages for an interrupted meal break.

54. Defendant does not adequately inform Plaintiff and the FLSA Collective about their entitlement to seek wages for interrupted meal breaks.

55. Defendant regularly suffers or permits Plaintiff and the FLSA Collective to perform more than *de minimis* work during their 30-minute unpaid meal breaks.

56. Defendant knows that Plaintiff and the FLSA Collective regularly experience interrupted meal breaks because: Defendant maintains policies, practices and procedures that require Plaintiff and the FLSA Collective to prioritize their patient care duties over their ability to take an uninterrupted meal break; Defendant has ready access to staffing, patient census and patient acuity information suggesting Plaintiff and the FLSA Collective are regularly unable to leave their units to take a full meal break; Defendant's managers assign, oversee, or are responsible for the work Plaintiff and the FLSA Collective do during meal breaks; Plaintiff and the FLSA Collective routinely perform meal break work in plain sight on Defendant's premises; Plaintiff and the FLSA Collective perform work (such as administering medication or completing electronic forms) that creates a readily-available time record during meal periods; and Plaintiff and the FLSA Collective have regularly spoken to their managers and supervisors about issues relating to short staffing and meal break work.

57. Despite having both actual and constructive knowledge that Plaintiff and the FLSA Collective routinely experience interrupted meal breaks, Defendant has not taken any steps to accurately track their meal break work time, or pay the wages owed for this time.

58. By engaging in this conduct, Defendant has acted with willful and/or reckless disregard for the FLSA Collective members' rights under the FLSA.

59. Plaintiff and the FLSA Collective have been harmed as a direct and proximate result of Defendant's unlawful conduct, because Defendant regularly and consistently deprives Plaintiff

13

and the FLSA Collective of overtime wages owed for meal break work they perform in workweeks of 40 hours or more.

60. For all the reasons stated above, Plaintiff and the FLSA Collective are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. §216(b).

## COUNT II
## VIOLATION OF THE IMWL
## Unpaid Overtime Wages

61. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

62. Defendant is an "employer" and Illinois Plaintiffs are "employees" under the IMWL, 820 ILCS § 105 *et seq*.

63. Plaintiff is seeking to recover "wages" as that term is defined by the IMWL.

64. Plaintiff and the Illinois Class are employees entitled to the IMWL's protections, and, during the relevant period, were not exempt from receiving wages payable under the IMWL or its enabling Regulations for any reason.

65. Section 105/4(a) of the IMWL requires employers to pay employees one and one-half times their regular rate for all hours worked over forty (40) per work week. Section 105/12 of the IMWL provides that employers who violate the provisions of this act are liable to affected employees for unpaid wages, costs, attorneys' fees, damages of 2% of the amount of any such underpayment for each month following the date of underpayments, and other appropriate relief.

66. Defendant violated the IMWL, 820 ILCS § 105 *et seq.*, by regularly and repeatedly failing to properly pay overtime pay to Illinois Plaintiffs.

67. There is no language in the IMWL, no exception to the IMWL or its enabling Regulations, or any applicable provision elsewhere in Illinois law that permits Defendant to avoid

paying Plaintiff and the Illinois Class for their overtime work, so Defendant has no good faith justification or defense for failing to pay Plaintiff and the Illinois Class members all wages mandated by the IMWL.

68. Defendant's failure to pay Plaintiff and the Illinois Class all wages owed for their meal break work violates the IMWL and has caused them to suffer economic harm.

69. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the Illinois Class have suffered and will continue to suffer lost wages and other damages.

## COUNT III
## VIOLATION OF THE IWPCA
### Failure to Pay Wages

70. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

71. At all times material, Plaintiff was Defendant's "employee" as defined by the IWPCA, 820 ILCS 115/2.

72. At all times material, Defendant was a corporation that paid compensation owed to employees and was thus an "employer" as defined by the IWPCA, 820 ILCS 115/2.

73. Plaintiff and Defendant entered into an agreement which is a valid and enforceable "contract or employment agreement" as defined by the IWPCA ("Employment Agreement").

74. Pursuant to Plaintiff and Defendant's agreement, Defendant was to provide Plaintiff with a $1,500 bonus after 90 days of employment.

75. The IWPCA requires employers to pay employees all wages earned by an employee during a semi-monthly or bi-weekly pay period no later than 21 days after the end of the pay period in which such wages were earned. 820 ILCS 115/4.

76. The IWPCA also requires employers to pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee. 820 ILCS 115/2; 820 ILCS 115/5.

77. As of this Complaint's filing date, Defendant has only paid Plaintiff $500 of the $1,500 bonus it promised to Plaintiff; Defendant failed to pay the remaining $1,000 to Plaintiff.

78. Defendant's failure to pay Plaintiff pursuant to the terms of the parties' agreement constitutes a violation of the IWPCA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for an Order:

a. Certifying this matter to proceed as a collective action with respect to Count I and as a class action with respect to Count II;

b. Approving Plaintiff as an adequate Class representative;

c. Appointing Stephan Zouras, LLP to serve as Class Counsel;

d. Finding Defendant willfully violated the applicable provisions of the FLSA and IMWL by failing to pay all required overtime wages to Plaintiff and the FLSA Collective and Illinois Class members;

e. Granting judgment in favor of Plaintiff and the FLSA Collective and Illinois Class members against Defendant on Counts I and II;

f. Granting judgment in favor of Plaintiff on Count III;

g. Awarding all available compensatory damages in amounts to be determined;

h. Awarding all available liquidated damages in amounts to be determined;

i. Awarding pre-judgment interest on all compensatory damages due;

j. Awarding a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

k. Awarding equitable and injunctive relief precluding the

       continuation of policies and practices pled in this Complaint;

l.    Awarding any further relief the Court deems just, necessary and proper; and

m.    Maintaining jurisdiction over this action to ensure Defendant's compliance with the foregoing.

## JURY DEMAND

Plaintiff hereby demands a trial by jury in the above-captioned matter.

Date:  December 13, 2018                     Respectfully Submitted,

                                              */s/ Haley R. Jenkins*
                                              Ryan F. Stephan
                                              Haley R. Jenkins
                                              **STEPHAN ZOURAS, LLP**
                                              100 N. Riverside Plaza
                                              Suite 2150
                                              Chicago, Illinois 60606
                                              312.233.1550
                                              312.233.1560 *f*
                                              rstephan@stephanzouras.com
                                              hjenkins@stephanzouras.com

**CERTIFICATE OF SERVICE**

    I, the attorney, hereby certify that on December 13, 2018, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

    */s/ Haley R. Jenkins*