IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADEBISI BELLO, individually, | ) | |
| and on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 18-cv-8196 |
| v. | ) | |
| | ) | Hon. Matthew F. Kennelly |
| THE PARC AT JOLIET, LLC, | ) | Hon. Mag. Jeffrey Cole |
| | ) | |
| Defendant. | ) | |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT, RELEASE, ATTORNEYS' FEES, COSTS, AND A SERVICE AWARD TO NAMED PLAINTIFF**

Plaintiff Adebisi Bello ("Named Plaintiff"), individually and on behalf of 54[1] Opt-in Plaintiffs (collectively, "Plaintiffs"), alleges that Defendant The Parc at Joliet, LLC ("Defendant" or "Parc") deprived her and other full-time, hourly Certified Nurse Assistants, Licensed Practical Nurses or Registered Nurses of promised bonuses and overtime wages due under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS §§ 105, *et seq.*, the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.*, and the**Error! Bookmark not defined.***,* Plaintiffs and Defendant (the "Parties") have agreed to settle all claims arising from or associated with the foregoing claims. The Parties, by and through counsel, respectfully request this Court enter an Order approving the Parties' proposed Settlement Agreement because it represents a fair and reasonable resolution of the Parties' bona fide dispute and further state as follows:

---

[1] Two individuals opted into this matter who did not work for Defendant during the statutory period and will not receive payments in connection to this action: Arlisha Mabery and Keshia Woods.

**I.      RELEVANT BACKGROUND**

On December 13, 2018, Plaintiff filed a Collective and Class Action Complaint ("Complaint") against Defendant seeking unpaid wages and other compensation, individually and on behalf of all others similarly situated under the FLSA, IMWL, and IWPCA as a result of Defendant's alleged failures to pay Plaintiff a promised bonus and to compensate Plaintiff for work performed during missed or interrupted meal breaks. (Dkt. No. 1.) Defendant answered the Complaint on March 4, 2019. (Dkt. No. 11.) On August 30, 2019, the Parties filed a motion seeking approval of their stipulation to conditionally certify the collective pursuant to 29 U.S.C. § 216(b) and proposed notice to the collective. (Dkt. No. 19.) The Court approved notice to the putative Collective under § 216(b) of the FLSA on September 5, 2019. (Dkt. No. 21.) During the 60-day notice period, 52 Opt-in Plaintiffs joined the collective action. Following the notice period, an additional 2 Opt-in Plaintiffs joined the collective action and are included in this Settlement.

Defendant denied and continues to deny any liability, wrongdoing, or legal violations of any kind related to the claims and contentions asserted in the Complaint, or any other violation or wrongdoing. Defendant maintains that all employees were and always have been properly compensated and that no bonuses or overtime pay of any kind is owed to Plaintiffs. Defendant has also disputed that a class or collective action is appropriate. Nonetheless, after exchanging informal settlement correspondence, on August 18, 2020, the Parties participated in a formal settlement conference with Magistrate Judge Jeffrey Cole. Following arms-length negotiations, the Parties reached a settlement resolving all matters between them arising under the FLSA, IMWL, and IWPCA to avoid the burden and expense of continued litigation. (*See* Exhibit A, Settlement Agreement and Release (filed under seal pursuant to the Court's August 21, 2020 Order (Dkt. No. 53).)

**II. SUMMARY OF SETTLEMENT TERMS**

The terms of this settlement are contained in the Settlement Agreement and its exhibits. There are no undisclosed side agreements between Plaintiffs and Defendant. (Exhibit B, Decl. of Haley R. Jenkins ("Jenkins Decl.") ¶ 9.)

**A. The Settlement Amount.**

To avoid the time and expense of continued litigation and risks and delays inherent in continuing the litigation, the Parties agreed to the Settlement Fund set forth in the Settlement Agreement. (Settlement Agreement ¶ 30.) The Settlement Amount represents the full extent of Defendant's settlement-related obligations and covers: (1) all attorneys' fees and costs in connection with Plaintiffs' counsel's representation of Plaintiffs, including all attorneys' fees and costs that may arise in the future in connection with the Settlement Agreement, including, without limitation, seeking Court approval of the Settlement Agreement; (2) all payments to Named Plaintiff and Opt-In Plaintiffs; and (3) a service award to the Named Plaintiff ("Service Award"). *Id.*

**B. Settlement Collective Members.**

Subject to Court approval, the Parties have agreed to fully certify, for settlement purposes only, an FLSA collective defined as follows:

> All individuals who were employed by Defendant as full-time, hourly Certified Nurse Assistants, Licensed Practical Nurses or Registered Nurses at any time between December 13, 2015 and June 1, 2019, and who submitted a signed Consent to Become Party Plaintiff form to "opt in" to the action captioned *Bello v. Parc at Joliet, LLC*, Case No. 1:18-cv-08196 (N.D. Ill.), on or before August 18, 2020 ("Settlement Collective").

(Settlement Agreement ¶ 33.)

### C. Releases

The Settlement Agreement provides that upon entry of an Order approving the Settlement, Plaintiffs will release all claims for unpaid wages, unpaid compensation, or wages- or compensation-related damages or penalties of any kind against any of the Released Parties (as that term is defined in paragraph 26 of the Settlement Agreement), including any such claims that arise under the FLSA, IMWL, and/or IWPCA. (Settlement Agreement ¶¶ 25, 44, 45.) Additionally, the Named Plaintiff has executed a General Release of all claims against any of the Released Parties (*See* Exhibit B to Settlement Agreement.)

### D. Calculation and Distribution of Settlement.

The Settlement Fund will be fairly divided among members of the Settlement Collective according to the spreadsheet attached as Exhibit A to the Settlement Agreement. (Settlement Agreement ¶ 37.) Within 10 business days after the Settlement is funded, the Settlement Administrator shall send a check by First Class U.S. Mail to each Collective Member, including the Plaintiff, equal to each Settlement Collective member's share of the Settlement Fund, less Administrative Expenses paid to the Settlement Administrator, the Service Award to the Collective Representative, and the Fee Award to Collective Counsel. For all mailings returned as undeliverable, the Settlement Administrator shall perform a reverse look-up to find updated addresses and will cause the mailing to be re-mailed to those members of the Settlement Collective. (*Id.* ¶ 43(a).) Checks to the Settlement Collective Members shall remain valid and negotiable for one hundred eighty (180) days from the date of their issuance and may thereafter automatically be cancelled if not cashed within that time period. (*Id.* ¶ 43(d).) The Settlement Administrator will include language on all settlement checks stating that such checks are void one hundred eighty (180) days following the date such check was originally issued. (*Id.* ¶ 43(e).)

     **E.    Service Award to Named Plaintiff.**

The Settlement Fund includes distribution of a Service Award to the Named Plaintiff. (Settlement Agreement ¶ 36(d).) Within 10 business days after the Settlement is funded, the Settlement Administrator will send the Service Award to the Named Plaintiff, as described in the Settlement Agreement. (*Id.* ¶ 43(b).)

     **F.    Attorneys' Fees and Costs.**

The Parties agree that Collective Counsel may seek an award of attorneys' fees not to exceed $65,000.00 for work performed in connection with this matter, in addition to up to $5,000.00 for reimbursement of reasonable out-of-pocket costs incurred. (Settlement Agreement ¶ 51.) The Parties agree that these sums are fair and reasonable in light of all the facts and circumstances, including the past and anticipated future time spent by Collective Counsel, their hourly rates, the risks undertaken, and the results achieved.

**III.    LEGAL STANDARD**

In the Seventh Circuit, settlements of FLSA claims must be approved by a Court of competent jurisdiction. *See, e.g.*, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's Food Stores, Inc. v. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982)); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 7, 2001). An employee may compromise a claim under the FLSA pursuant to a court-authorized settlement of an action alleging a violation of the FLSA. *Lynn's Food Stores, Inc.*, 679 F.2d at 1355. When reviewing a proposed FLSA settlement, the district court must scrutinize the settlement for fairness and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1353, 1355. If a settlement in an employee FLSA suit reflects a reasonable compromise over issues, such as FLSA

5

coverage or computation of back wages that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

When FLSA cases are settled on a collective basis, courts in this district have held that a one-step settlement approval process is appropriate. *See Bainter v. Akram Investments, LLC*, No. 17-cv-7064, 2018 WL 4943884, at *2 (N.D. Ill. Oct. 9, 2018); *Briggs v. PNC Fin. Servs. Group, Inc.*, No. 15-cv-10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016). Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982).

### IV. ARGUMENT

The settlement reached by the Parties represents a fair, just, and reasonable resolution of the claims alleged by Plaintiffs under the FLSA and any remaining disputes between the Parties. The agreement reached is the result of extensive negotiations between the Parties to resolve this matter. The settlement figures agreed upon bear a reasonable and fair relationship to the amounts alleged by the Named and Opt-In Plaintiffs, and also take into account the specific risks and uncertainties associated with this litigation. The Settlement Agreement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients. Significantly, the Settlement Agreement provides for monetary relief for all Plaintiffs, including each of the 52 Plaintiffs who opted into the lawsuit.

#### A. The Proposed Settlement Is the Product of Contested Litigation.

The settlement of the instant action involves a *bona fide* dispute. Plaintiffs maintain that Defendant maintained a common policy to automatically deduct 30-minute meal breaks from Plaintiffs' pay each shift but never permitted Plaintiffs the coverage or relief necessary to allow

6

them the luxury of an uninterrupted 30-minute meal break. Accordingly, Plaintiffs alleged Defendant violated the FLSA and IMWL by failing to pay overtime for all hours worked. Plaintiffs further alleged that Defendant failed to pay them promised bonuses in violation of the IWPCA. On liability, Plaintiffs would have to overcome Defendant's numerous legal and factual defenses including but not limited to whether Defendant properly compensated Plaintiffs under state and federal law; and whether Defendant acted willfully or in good faith. In addition, *bona fide* disputes exist as to whether the Plaintiffs could credibly establish the hours of overtime they worked and the weeks in which they worked overtime. Plaintiffs would likewise have to overcome arguments that a two- rather than three-year FLSA statute of limitations applied based on the facts of this case.

Defendant denies liability or wrongdoing of any kind associated with Plaintiffs' claims, and Plaintiffs believe they have meritorious claims. The Parties have determined, however, that continued litigation would be protracted, expensive, uncertain, and contrary to their best interests. In light of these realities, the Parties believe that the Settlement Agreement is the best way to resolve the disputes between and among them.

    **B.**    **The Settlement Is Fair, Adequate, and Reasonable.**

In determining whether a settlement is fair and reasonable, courts have considered non-exclusive factors such as: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the Plaintiffs to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all

the risks of litigation." *Butler v. American Cable & Telephone, LLC*, No. 09 CV 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011).

The Parties' settlement is fair and reasonable and meets all applicable factors considered by courts. The settlement appropriately factored in the complexity, risk, expense, likely duration of the litigation and the range of reasonableness of the settlement fund in light of the best possible recovery. (Settlement Agreement ¶¶ 6, 7.) Namely, the parties were able to reach a settlement on a collective basis before incurring the expense of extensive discovery, motion practice, and trial. Accordingly, the settlement is appropriate at this stage of the proceedings.

The settlement here is not the product of fraud or collusion. The settlement was reached in an adversarial proceeding through arm's length negotiations between capable attorneys who have extensive experience with wage and hour claims. The settlement agreement was procured between counsel for the Parties after a settlement conference overseen by Magistrate Judge Cole. Counsel for the Parties exchanged numerous proposals and counterproposals before andduring the settlement conference on both monetary and non-monetary terms, and were able to narrow the gap between their positions and ultimately reach a compromised settlement.

Counsel for the Parties are experienced in complex class and collective action litigation and have represented clients in numerous wage and hour class and collective actions. *See generally* http://www.stephanzouras.com (Plaintiffs' counsel's website). Additionally, counsel for the Parties were thoroughly familiar with the facts and legal issues when settlement was reached. In the end, experienced counsel on both sides of the matter deemed the settlement fair and reasonable.

Finally, the amount of the settlement is reasonable in relation to the potential recovery. As in all wage and hour claims, particularly in the collective action context, the nature and amount of recoverable damages is uncertain. Even if a trier of fact ultimately found liability, a range of

8

possible damages exist depending on factors including, but not limited to, the Parties and their witnesses' credibility, the limitations in the available data tracking work performed, the applicable statute of limitations, and Defendant's knowledge, willfulness, and good faith. Defendant produced adequate discovery to perform the necessary calculations to determine the potential range of recovery in this case. The Settlement Agreement provides that $159,000.00 will be allocated among the Plaintiffs as detailed in Exhibit A to the Settlement Agreement. The distribution is based on an analysis of data from over 130 weeks worked by Plaintiffs during a three-year limitations period. To determine an equitable distribution among the Plaintiffs, the settlement funds were allocated proportionately based on the number weeks worked during the statutory period and each Plaintiff's most recent hourly rate during the relevant period.

The settlement also provides for reasonable attorneys' fees and costs and a service payment to the Named Plaintiff. Plaintiffs who favorably settle their cases are entitled to reasonable attorneys' fees and costs under the FLSA. *See* 29 U.S.C. § 216(b) (the court "*shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of action") (emphasis added). The Settlement Agreement provides that Plaintiffs' counsel will receive $65,000.00 in attorneys' fees and up to $5,000.00 in reasonable out-of-pocket costs, a compromise sum that is consistent with the attorney-client agreement executed by the Named Plaintiff. (Settlement Agreement ¶ 51.)

In addition, in consideration for executing a General Release of claims and all other potential claims arising out of her employment, and for her significant contribution to the prosecution and resolution of the lawsuit, the Settlement Agreement provides that Named Plaintiff Adebisi Bello will receive a service payment of $10,000.00, in addition to her settlement share. (Settlement Agreement ¶ 54.) "[I]n employment litigation, the plaintiff is often a former or current

9

employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005)).

In addition to taking on the risk of adverse action, Plaintiff played an active role at every step of this litigation. She initiated the lawsuit, reviewed and approved the Complaint, conferred and corresponded with counsel, and personally participated in the settlement conference. Based on the aforementioned factors, the Parties conclude that a settlement on the terms set forth in the Settlement Agreement is fair, reasonable, adequate, in the best interests of the Parties, and not worth the costs and risks associated with continued litigation.

V.  **CONCLUSION**

For the reasons set forth above, the Parties respectfully request the Court enter an Order: (1) approving the Settlement Agreement, General Release, payments to Plaintiffs, including the service award to the Named Plaintiff, and the payment of attorneys' fees and costs set forth therein; (2) dismissing the action in its entirety with prejudice; and (3) retaining limited jurisdiction only for the purpose of enforcing payment as set forth in the Settlement Agreement. *See* Proposed Approval Order and Final Judgment attached hereto as <u>Exhibit C</u>.

Date: September 24, 2020                          Respectfully Submitted,

| /s/ Haley R. Jenkins | /s/ Jason C. Kim |
|---|---|
| Ryan F. Stephan | Jason C. Kim |
| Haley R. Jenkins | David G. Weldon |
| **STEPHAN ZOURAS, LLP** | **NEAL, GERBER & EISENBERG LLP** |
| 100 N. Riverside Plaza, Suite 2150 | Two North LaSalle Street |
| Chicago, Illinois 60606 | Suite 1700 |
| 312.233.1550 | Chicago, Illinois 60602 |
| 312.233.1560 *f* | 312.269.8000 |
| rstephan@stephanzouras.com | jkim@nge.com |
| hjenkins@stephanzouras.com | dweldon@nge.com |
| | |
| Counsel for Plaintiffs | Counsel for Defendant |

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on September 24, 2020, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

                                             */s/ Haley R. Jenkins*